IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | |
|---|---|
| **GETWELLNETWORK, INC.,**  ) <br> 7700 Old Georgetown Road,  ) <br> Bethesda, Maryland 20814,  ) <br> ) <br>           **Plaintiff,**  ) <br>    **v.**  ) <br> ) <br> **LARRY GROSSMAN,**  ) <br> 3305 Pinehurst Lane,  ) <br> Louisville, KY 40241,  ) <br> ) <br>           **Defendant.**  ) <br> ) | **JURY TRIAL DEMANDED** <br><br> **Civil Action No. _____** |

## COMPLAINT

Plaintiff GetWellNetwork, Inc. ("GetWellNetwork" or the "Company"), by and through undersigned counsel, respectfully submits this Complaint against Defendant Larry Grossman ("Grossman"), a former employee of GetWellNetwork.

## NATURE OF THE ACTION

1. GetWellNetwork, a leading provider of interactive patient care systems, brings this action for breach of contract and injunctive relief arising from Grossman's acceptance of employment with Hospedia, Ltd., in a position in which he will provide services to Hospedia in direct violation of the non-competition provision in the Employee Proprietary Information, Inventions, Non-Solicitation, and Non-Competition Agreement ("Agreement") that Grossman signed on November 17, 2011, and promised to abide by, as a condition of his employment with GetWellNetwork.

2. The Agreement prohibits Grossman from providing services similar to those he provided for GetWellNetwork to any competitor in a certain geographical area for a one-year period. Notwithstanding this prohibition, Grossman accepted employment with Hospedia, a

1

competitor of GetWellNetwork that recently entered the U.S. market ill-equipped to perform a contract it recently won with the U.S. Department of Veterans Administration, to provide services similar to those he provided to GetWellNetwork. Grossman's actions are in direct violation of his contractual promises to GetWellNetwork.

3. By this action, GetWellNetwork seeks: (i) a money judgment in favor of GetWellNetwork for the damages and injuries it suffered and continues to suffer as a direct and proximate result of Grossman's conduct; (ii) preliminary and permanent injunctive relief preventing Grossman from continuing his employment relationship with Hospedia and, otherwise violating the Agreement, for the duration of the restrictive period set forth in the Agreement; and (iii) all such other and further relief as this Court deems necessary and proper under these circumstances.

## PARTIES

4. Plaintiff GetWellNetwork is a privately held corporation organized under the laws of the State of Delaware with its principal place of business at 7700 Old Georgetown Road, 4th Floor, Bethesda, Maryland 20814. GetWellNetwork is the nation's leading provider of interactive patient care systems. GetWellNetwork's patient-centered platform, delivered across multiple technology platforms including mobile devices, computers and televisions, enables health care providers to implement a revolutionary care delivery model called Interactive Patient Care to improve performance and patient outcomes.

5. Defendant Grossman is a former Implementation Project Manager for GetWellNetwork and a resident of Louisville, Kentucky.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Md. Code Ann., Cts. & Jud. Proc. §§ 1-501 and 4-401(1).

7. Venue is proper in the Circuit Court for Montgomery County pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-202(11) because Grossman is a nonresident individual and may be sued for damages in any county in the state. Grossman consented to jurisdiction of the courts of the State of Maryland in Paragraph 12.1 of the Agreement.

8. This Court has jurisdiction over Grossman pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-102(b) by reason of his consent in Paragraph 12.1 of the Agreement.

## FACTUAL ALLEGATIONS

*Background*

9. Interactive Patient Care ("IPC") is an emerging, innovative care delivery model developed by GetWellNetwork and based on the premise that a more engaged patient leads to better healthcare outcomes. IPC focuses on the provision of educational and entertainment resources to the patient at the bedside through the in-room television, while at the same time improving operational efficiency. This approach is supported by interactive services tailored to meet the patient's individualized needs and provide healthcare workers with tools that deliver patient education, pain management and medication teaching, among other health subjects.

10. GetWellNetwork developed this system to offer a range of resources to improve patient satisfaction and education, including on-demand movies, internet access, games, informational videos related to patients' specific health conditions, meal ordering, and real-time surveys. GetWellNetwork's system also provides an interactive patient whiteboard to facilitate communications between patients, family members, and caregivers.

11. GetWellNetwork works with each individual client hospital to design a network, customize software and content, procure necessary hardware, and install that hardware on-site.

12. GetWellNetwork is recognized as the industry leader in the IPC market throughout the United States and is exclusively endorsed by the American Hospital Association. GetWellNetwork's IPC system has been purchased by 150 commercial hospitals and 32 U.S. Department of Veterans Affairs ("VA") medical centers.

*The GetWellNetwork/Grossman Agreement*

13. In November 2011, Grossman was hired as an Implementation Project Manager by GetWellNetwork.

14. At the time he first became employed, and as a condition of his employment, Grossman entered into an Employee Proprietary Information, Inventions, Non-Solicitation and Non-Competition Agreement on November 17, 2011.  A copy of the Agreement is attached as Exhibit 1.

15. Paragraph 6 of the Agreement (the "Non-Compete Provision") prohibits Grossman from "provid[ing] services, similar to those [he] provided to [GetWellNetwork], to any person or entity in competition . . . with [GetWellNetwork] within any state, province, or similar political unit in which [GetWellNetwork] has or solicits employees, consultants, contractors, or customers; or provides or solicits products or services" for a one-year period following his termination.

16. The Non-Compete Provision further states that a company is in competition with GetWellNetwork if it "develops, installs and operates proprietary interactive communications systems, including software, hardware and services, in hospitals, health care institutions and other facilities (the 'GWN Platform'), and distributes informational, educational and

4

entertainment-oriented content and services to patients in hospitals, health care institutions and other facilities throughout the United States via the GWN Platform . . . The parties agree that the scope of this provision will change to cover any changes in [Grossman's] activities or services, as well as any changes in [GetWellNetwork's] business, products or services, during [his] employment."

17.     As Implementation Project Manager, Grossman was responsible for a broad range of functions relating to managing the installation and implementation of the hardware and software for interactive services on projects to which he was assigned.  Grossman represented the full array of GetWellNetwork's products and services to its partners and clients.  He worked with GetWellNetwork's content, software, and hardware partners, vendors, and customers within all levels of the distribution channel to ensure proper implementation of the GetWellNetwork IPC solution and to resolve any technical issues.

18.     Grossman established relationships and coordinated with personnel in GetWellNetwork's various partner and customer accounts.  He also coordinated the involvement of necessary partner and internal GetWellNetwork teams during the solution development process in order to properly address customer needs.  During the pre-sale period, Grossman assisted account executives with technical issues associated with the preparation of bids to prospective clients.  After GetWellNetwork was selected for a project, Grossman participated in sales transition meetings to review the details of a project and develop an implementation plan.

19.     In addition, Grossman managed cross-functional teams to ensure successful delivery of the GetWellNetwork solution and customer satisfaction.  In particular, this involved overseeing and managing the implementation of the GetWellNetwork system, including network

integration, training clients on the use and maintenance of the system, troubleshooting, and engaging with other partners and teams to help accomplish these goals.

20. Grossman worked directly with GetWellNetwork clients to design and customize packages to suit the particular client's needs. This process included developing specific patient education protocols related to particular health conditions handled by the particular client institution, like heart disease or asthma.

21. Over the course of his employment, Grossman had extensive access to GetWellNetwork's proprietary tools, systems, methods, and processes in which GetWellNetwork has invested significant time and resources to develop. These resources facilitate the development, customization, and delivery of the Company's product and services to its clients, and provide GetWellNetwork with a competitive advantage in the marketplace.

22. Grossman had access to materials such as engineering processes and diagrams, product roadmaps, "how to" information packets, details on clients and client experiences, implementation protocols, and vendor partnerships. He also had access to customer lists, pricing, project bids, information on customers, customer proposals, and marketing information stored on the Company's internal database.

23. Implementation Project Managers also receive extensive information on GetWellNetwork's innovations, business plans and strategies, and client needs and expectations. For example, on September 25, 2013, Grossman attended a presentation about the Company's business plans, goals, and innovations, during which he received an electronic copy of written materials describing the Company's business strategies, project methodology on integration, and the Company's partnership and plans with vendors.

24. GetWellNetwork takes several measures to protect its proprietary information and innovations. It requires Implementation Project Managers, like Grossman, to sign the Agreement, which in addition to restrictions on post-employment competition and solicitation, also contains limitations on Grossman's ability to use GetWellNetwork's confidential information. Detailed business strategies are not widely distributed within the company. Moreover, the Company's email and electronic systems are password-protected, and those passwords must be changed at regular intervals.

### *Grossman's Resignation and Acceptance of Employment with a Competitor*

25. Upon information and belief, Hospedia recently won a government contract with the United States Veterans Administration ("VA") which it was woefully unprepared to fulfill. Needing experience, systems, and employees to carry out the contract with the VA for which it was otherwise unqualified, Hospedia engaged a third-party recruiter to poach employees from GetWellNetwork to leave the Company and accept employment with Hospedia, without regard to the contractual restrictions to which GetWellNetwork employees might be bound. The third-party recruiter acted as an agent for and on behalf of Hospedia in Hospedia's effort to poach employees from GetWellNetwork.

26. Upon information and belief, Hospedia's recruiter contacted various employees at GetWellNetwork to attempt to solicit them to accept employment at Hospedia. In particular, on or about September 5, 2013, Hospedia's recruiter emailed another GetWellNetwork Project Manager regarding an opportunity with Hospedia as a "Solutions Consultant." The role of "Solutions Consultant" was described as an "advisor and ambassador for [Hospedia's] products across the US." The job would involve "working with the clients or end users through the 'discovery' or Presales process, supporting the bid and proposal development process as well as

supporting the implementation and ongoing management of solutions on a coordination and facilitation level."

27.     On or around that same time, Hospedia's recruiter contacted Grossman to solicit his interest in employment with Hospedia.  Utilizing GetWellNetwork's equipment, Grossman communicated with Hospedia and its recruiter about securing a new position with Hospedia.  Grossman did not reveal to GetWellNetwork that he was in communication with, or seeking to become employed by, GetWellNetwork's competitor.  On or about October 7, 2013, Grossman tendered a letter of resignation to GetWellNetwork, stating that his last date of employment with GetWellNetwork would be October 18, 2013.

28.     On October 8, 2013, GetWellNetwork attempted to verify whether Grossman was leaving to work for a competitor.  When asked directly whether he was going to work for a competitor, Grossman refused to answer.  Sharon Kaufman, GetWellNetwork's Senior Vice President, People, spoke with Grossman on or about October 9, 2013, about his resignation and again asked him whether he was going to work for a competitor.  Ms. Kaufman reminded Grossman of the terms of the Agreement restricting his ability to compete with GetWellNetwork for a period of one year following his termination.  Grossman argued that he would not be in violation of the Agreement as long as he did not have the same position with his new employer as he held with GetWellNetwork.  However, Grossman refused to respond to the Company's question as to whether he was going to work for a competitor.

29.     In light of Grossman's continued refusal to answer the question of whether he was going to work for a competitor, on October 11, 2013, GetWellNetwork sent Grossman a letter stating that October 11 would be his last day as an active employee.  In the letter, Grossman was

asked to return all company proprietary information and material.  The letter also reminded Grossman that he was bound by the Agreement, a copy of which was attached.

30.     GetWellNetwork made repeated inquiries of Grossman, Hospedia, and Hospedia's business partner, Barco, Inc., in an effort to confirm that Grossman accepted a position at Hospedia, and if so, to determine what Grossman's role would be with Hospedia.

31.     On October 15, 2013, Wellford Dillard, Chief Financial Officer for GetWellNetwork, sent letters to Daniel Hickmore and Paul Martin of Hospedia advising them of Grossman's Agreement.  Neither Hospedia nor either of the individuals responded to the Company's letters.

32.     On October 22, 2013, counsel for GetWellNetwork sent a letter to Tim Weil, Hospedia's CEO, as well as Hickmore and Martin, to request confirmation that Grossman had become employed by Hospedia and what his role would be.  In that letter, GetWellNetwork's counsel enclosed a copy of the Agreement and advised these individuals that Grossman was bound by non-competition provisions.  Counsel requested that Hospedia confirm whether Grossman was offered a position or had accepted a position with Hospedia.  The letter also requested further details regarding Grossman's job duties with Hospedia.

33.     On October 22, 2013, counsel for GetWellNetwork also sent a letter to Mr. Grossman reminding him of his obligations under the Agreement and asking him for information regarding his new job position.  As of the date of filing, Mr. Grossman has not answered any of the letters or requests for confirmation of his employment or role from either GetWellNetwork or its counsel.

34.     On October 29, 2013, Hospedia's counsel, Ms. Nancy E. Sasamoto of Masuda, Funai, Eifert & Mitchell, Ltd., responded to GetWellNetwork's request for information about

Grossman's relationship with Hospedia. Hospedia's counsel confirmed that Grossman is employed by Hospedia as Regional Director for North America. She described his responsibilities as the "general management of Hospedia's North American business, a significant element of which will be managing Hospedia's relationship with Barco and its partners." Hospedia's counsel also claimed that Hospedia instructed Mr. Grossman not to "disclose to Hospedia or use for the benefit of Hospedia" GetWellNetwork's proprietary information.

35.     Counsel for Hospedia stated that Grossman is not in violation of his agreement, however, because (1) Hospedia is not an "entity in competition with GetWellNetwork," and (2) his role at Hospedia is "fundamentally different from his role at the GetWellNetwork." However, Hospedia's counsel would not disclose any further information about Grossman's role with Hospedia, including a job description for "Regional Director – North America," despite multiple requests from GetWellNetwork.

36.     In communications with Hospedia's counsel, counsel for GetWellNetwork attempted again to determine Grossman's role with Hospedia. Counsel for Hospedia refused to respond to these reasonable requests for information about Grossman's job duties and stated that it had "nothing to add" to its October 29 letter. Counsel for Hospedia also refused to provide evidence that Hospedia had instructed Grossman not to use GetWellNetwork's confidential information. Counsel for GetWellNetwork immediately requested clarification of Ms. Sasamoto about whether Hospedia had the information requested, or whether it was simply refusing to provide it without legal process. Ms. Sasamoto responded again that Hospedia "declines to supplement its prior response."

37. The reason for Hospedia's evasion and refusal to cooperate with GetWellNetwork's requests and provide a copy of the "Regional Director – North America" job description became clear when GetWellNetwork, following Grossman's departure from the company, discovered a document purporting to be the final offer letter ("Final Offer Letter") that Hospedia sent Grossman. The Final Offer Letter was sent to Grossman on October 7, 2013, the same day he resigned from GetWellNetwork. On information and belief, Grossman sent an email to Hospedia accepting Hospedia's offer that same day. The Final Offer Letter describes Grossman's position with Hospedia as "Regional Director – International" for the "North America Region" and contains an extensive description of Grossman's job duties. Hospedia's position description for Grossman shows that the services he was hired to provide to Hospedia include numerous of the same duties, responsibilities, and services he had provided in his position at GetWellNetwork.

38. At Hospedia, Grossman's job description shows that he was hired to coordinate with personnel, customers, and partners to ensure successful implementation of the CareConnex solution. Specifically, he will be "[e]ngaging with sales and technical contacts with[in] all levels of the channel . . . to ensure the CareConnex solution and services are positioned correctly, understood, and any technical objections are overcome." He will "[c]oordinate the involvement of company personnel, including support, service, and management resources, in order to meet customer expectations and satisfaction in the CareConnex Solution." In addition, "[t]his will involve working with more complex existing customer environments, overseeing the implementation and integration of any CareConnex service from a connect and project management perspective, maximising feature utilisation by client education and analysis, troubleshooting, and engaging with Service Delivery, partners, and the Customer Experience

teams to help achieve these goals." As part of this role, he will "establish productive, professional relationships with key personnel in regional partner accounts."

39.     As "Regional Director" Grossman will be managing Hospedia's North American business, which provides a nearly identical IPC solution to healthcare institutions. Moreover, Hospedia has been recruiting "solutions consultants" to provide implementation services for its business in the United States. These "solutions consultants" would be involved in "ongoing training and support of partners in the region, working with the clients or end users through the 'discovery' or Presales process, supporting the bid and proposal development process as well as supporting the implementation and ongoing management of solutions on a coordination and facilitation level."

40.     Despite the assertions of Hospedia's counsel to the contrary, Hospedia is a direct competitor of GetWellNetwork. Hospedia, through its partnership with Barco, Inc., directly competes with GetWellNetwork in the United States to provide a nearly identical comprehensive suite of Interactive Patient Care solutions through a system called "CareConnex." CareConnex, launched in 2013, provides an end-to-end IT solution to help hospitals deliver patient care and ensure clinical efficiency. This system emphasizes patient engagement during the hospital stay.

41.     The CareConnex solution delivers point-of-care enterprise software through a patient bedside terminal. CareConnex also allows patients to easily access media such as television, movies, and games through its bedside system. Patients can personalize their stay through meal ordering and communication with their care team, and provide live feedback to their healthcare providers during their stay.

42.     CareConnex provides integration and support expertise to client hospitals, in addition to other accessories to supplement its software system. CareConnex also offers content

aggregation and yield management services to its clients through Hospedia.  Upon information and belief, Hospedia, as the provider of the software underlying CareConnex, provides ongoing support to end users, including training and workflow implementation.

43.     As discussed in paragraphs 9-12, GetWellNetwork similarly provides "patient engagement solutions" to "educate and empower patients along the care continuum." GetWellNetwork's "patient-centered" platform, delivered across multiple technology platforms, enables patients to view movies, access the Internet, play games, and get health information on the bedside television.  GetWellNetwork also works with individual hospitals to implement its software platform.  This process includes designing a network, developing customized software and content for each client, procuring necessary hardware, installing that hardware onsite, and providing technical support on the use and maintenance of the system.

44.     Moreover, Hospedia directly competed with GetWellNetwork for a contract with the VA.  In July 2013, the VA issued a request for quotation ("RFQ") to supply a "GetWellNetwork Brand Name or Equivalent Interactive Patient Care Solution" to the South Central VA Care Network Location 16 ("VISN 16").  The Scope of Work required the contractor to "provide all equipment and create a complete operating GetWellNetwork brand name or equal IPC at the designated healthcare facilities within VISN 16."

45.     The prime contractor submitted separate proposals including both the GetWellNetwork IPC system and the CareConnex system developed by Barco and Hospedia.  The VA awarded the contract to Alvarez in response to the proposal that included the CareConnex system.  In the assessment of the VA, the CareConnex solution was "equivalent" to GetWellNetwork's "brand name" IPC solution.

46. In addition, as a Hospedia employee, Grossman is competing in a prohibited geographical area under the Agreement. GetWellNetwork provides IPC services across the United States. The "Regional Director – North America" position that Grossman has accepted also involves providing IPC services across the United States. Hospedia has already competed with GetWellNetwork for the VA contract. By hiring Grossman, despite the legal restrictions in his Agreement, Hospedia has enabled itself to compete in the United States in a way that it lacked prior to Grossman's hiring.

## COUNT I: BREACH OF CONTRACT

47. GetWellNetwork re-alleges and incorporates the allegations in paragraphs 1-46.

48. The Agreement constitutes a valid, binding, and enforceable contract between GetWellNetwork and Grossman.

49. GetWellNetwork has performed all of its duties and obligations under the Agreement.

50. Under the terms of the Agreement, Grossman is prohibited from providing the same services he provided to GetWellNetwork to a competitor for a one-year period following his termination.

51. Grossman accepted a position with Hospedia, a competitor of GetWellNetwork, on or about October 7, 2013.

52. Grossman's conduct constitutes a material breach of, among other things, the Non-Compete Provision in the Agreement.

53. As a direct result of Grossman's material breach of the Non-Compete Provision in the Agreement, GetWellNetwork has been damaged in amount to be proven at trial.

GetWellNetwork's damages include, but are not limited to, unjust enrichment, a loss in value of its trade secrets, and other damages to be proven at trial.

## COUNT II: PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

54. GetWellNetwork re-alleges and incorporates the allegations in paragraphs 1-53.

55. As described above, Grossman has materially breached the Agreement by accepting employment with a competitor of GetWellNetwork within one year of his termination to provide services similar to those that he provided to GetWellNetwork.

56. GetWellNetwork has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of an injunction against Grossman.

57. Unless Grossman is enjoined from the foregoing conduct, GetWellNetwork will be irreparably harmed.

58. As a result of Grossman's wrongful and unlawful activities, GetWellNetwork has sustained damages in an undetermined amount. Unless enjoined as requested herein, Grossman will persist in his wrongful and unlawful activities and GetWellNetwork will continue to sustain damages. Thus, GetWellNetwork will suffer irreparable harm for which there is no adequate remedy at law.

59. Granting injunctive relief would further the public interest.

## PRAYER FOR RELIEF

WHEREFORE, GetWellNetwork, Inc., prays for the following relief:

1. Award monetary compensatory damages;

2. Award plaintiff costs and reasonable attorneys' fees;

3. Award plaintiff pre- and post-judgment interest;

4.      An order preliminarily enjoining Grossman from further violation of the Agreement;

5.      An order permanently enjoining Grossman from further violation of the Agreement; and

6.      Any such other and further relief as the Court may deem just and proper.

## JURY DEMAND

GetWellNetwork, Inc. hereby demands a trial by jury of all issues so triable.

Dated:  November 13, 2013

Respectfully submitted,

_____
John T. Koerner
Robert G. Lian, Jr. (motion for admission *pro hac vice* to be submitted)
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, NW
Washington, D.C. 20036
Telephone:  (202) 887-4000
Facsimile:  (202) 887-4288

*Attorneys for Plaintiff GetWellNetwork, Inc.*